**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO**

| | |
|---|---|
| In re:<br><br>ELK RUN PROPERTY OWNERS ASSOCIATION, INC.,<br><br>    Debtor. | Case No.: 26-10311 TBM<br>Chapter 11 (Subchapter V) |
| ELK RUN PROPERTY OWNERS ASSOCIATION, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>FIRST AMERICAN TRUST, FSB, AS TRUSTEE; WORLDMARK, THE CLUB; WYNDHAM VACATION RESORTS INC; COLLEEN AMBROZY; JOSE ARCHULET; GARY LEE ARTHUR; JANET ARTHUR, DECEASED, HER DEVISEES AND PERSONAL REPRESENTATIVES; FELISHA GILMAN BABER; ERNEST BACA; JULIE BACA; KAREN BAILEY; RICHARD BAILEY; ALBERTA BECK; DAVID BECK; DOROTHY BECKER BONBRAKE; GARY BEEGLE; NANCY BEEGLE; DANIELLE BEERMANN; DARREN BEERMANN; DAWN BEERMANN; PATRICIA BEERMANN; FRED BEERMANN, DECEASED, HIS DEVISEES AND PERSONAL REPRESENTATIVES; DAVID BEITLER; SAMONE BEITLER; TIFFANY BELL; LEROY BENALLY; RHONDA BENALLY; DIANE JEAN BENDTSEN; RANDALL REY BENDTSEN; CHERYL BENNETT; JIM BENNETT; LENORE BERRY; HEIDI BISSELL; KENT BISSELL; ROSALIE | Adv. No.: 26-1168 TBM |

1612048758.3

BITNER; MATTHEW BIXBY; SUSAN BIXBY; MICHAEL BLANK; LUCAS BORREGO; MELISSA BORREGO; RENEE BOTCHER; JOHN BOTTERILL; BRENT BOYACK; MARCIA BOYACK; CAROLYN BOYLES; JOHNNY BOYLES; JAMES BRADLEY; JUDITH BRADLEY; JANET BRIGGS; JANET BROGAN; CHRISTOPHER BROUGH; BRENDA BROWN; FORREST BROWN; PETER BROWN; KATHERINE BURTON; NANCY BURZYCKI, TRUSTEE; STACY CALLAGHAN; TIM CALLAGHAN; ANTHONY CARMELI; JEANNE CARPENTER; KAYLA CARPENTER; SCOTT BRADLEY CARPENTER; STEVE CARPENTER; JACK CASS; ROSEMARIE CASS; ST LOUIS CATHOLIC CH; AARON CHADWICK; ALLEN CHAFFIN; DANI CHAFFIN; CATHERINE CHANG; OSBERT CHANG; JAMES CHILDS; MARIA CHILDS; ELLE COLLIER; LUCY COWAN; LOU ANN COX; TERRY COX; GLEN CRESPIN; MARGARET CRESPIN; JULIE CRISSINGER; PAUL CRISSINGER; STEVE CRONENBERG; DAVID CRUZ; DAVID GLENN CUMMINGS; NETTA FAYE CUMMINGS; DALE CUNNINGHAM; MARJORIE CUNNINGHAM; IVAN CURLEY; PHYLIS CURLEY; GINA DACOSTA; WILLIAM DACOSTA; PRISCILLA DALE; THERESA DALTON; HERIBERTO DE LA, DECEASED, HIS DEVISEES AND PERSONAL REPRESENTATIVES; CHARLES DELHOTAL; JERRY DENNEY; TAMMY DENNEY; LOUIS DEPAULI; MICHAEL DESO; CONNIE DONALD; LONNIE PAUL DONALD; MICHAEL DONNELLY; MARIA DOUGHTY; MICHAEL DOUGHTY; NANCY

2

1612048758.3

DRYDEN; LYNN DUNNING; PAMELA DUYS; LAURA EDLIN; JEFFREY EDWARDS; JOHN EICHLER; JOYCE EICHLER; R. ELLIS, DECEASED, HIS DEVISEES AND PERSONAL REPRESENTATIVES; JANET ENGE; RONALD ENGE; EMILIE ERVIN; JUDE ERVIN; NORMA ESPARZA; JOHNY FARRIS; VICKIE FARRIS; DENNIS FERGUSON; JAMYE FERGUSON; LEE FERGUSON; SONDRA FERGUSON; ANTHONY FICKER; KRISTI FICKER; DIANE LYNN FIELITZ; LYNN RICHARD FIELITZ; ARIA FINCH; BOB FINCH; KENNETH FLADAGER; VALERIE FLADAGER; JUDITH FORBES, TRUSTEE; CHARLES FRANK; SUSAN FRANK; DOROTHY FREEBAIRN, DECEASED, HER DEVISEES AND PERSONAL REPRESENTATIVES; JOANNE FRENCH; JENNETTE GARCIA; JONATHAN GARCIA; KEVIN GIBSON; JAMES GILLIAM; PEGGY GILLIAM; FRANCES GILLISON, TRUSTEE; WILLIAM GILLISON, TRUSTEE; CONNIE GILMAN; CRAIG GLEASON; KAREN GLIDEWELL; JAMES GLIDWELL; JAN GLOGOVSKY; RON GLOGOVSKY; JERI GRAHAM; JOSH GRAHAM; STEPHANIE GRANFORS; STEVE GREELEY; TERESA GREELEY; PAMELA GREENE; MICHAEL GRIEGO; HEATHER GRILLS, AS TRUSTEE OF THE JEFFREY D GRILLS AND HATHER H GRILLS JOINT LIVING TRUST DATED 7/24/2000 RESTATED 6/7/2019; JEFFREY GRILLS, AS TRUSTEE OF THE JEFFREY D GRILLS AND HATHER H GRILLS JOINT LIVING TRUST DATED 7/24/2000 RESTATED 6/7/2019; LORI GRISWOLD; GARY GUILBERT; NANCY HADLEY;

3

1612048758.3

ROBERT HADLEY; CHERYL HAGA; GARY HAGA, DECEASED, HIS DEVISEES AND PERSONAL REPRESENTATIVES; ALBINA HALL; JESS HANNA, DECEASED, HER DEVISEES AND PERSONAL REPRESENTATIVES; MIRIAM HANNA, DECEASED, HER DEVISEES AND PERSONAL REPRESENTATIVES; DON HARLAN; POULSON HARLAND, DECEASED, HIS DEVISEES AND PERSONAL REPRESENTATIVES; BARBARA HARRIS; RALPH HARRIS; JOSEPH LEE HAWKINS; JAMIE HAWORTH; RYAN HAWORTH; SAMUEL HAWTHORNE; LINDA FISH HENDRICK; OLIVER RAY HENDRICK, DECEASED, HIS DEVISEES AND PERSONAL REPRESENTATIVES; CARY HENDRICKS; TAYLOR HENDRICKSON EST; STEVEN HENSLEY; TIMOTHY HJELSTROM; SUSAN HOFFMEYER; LYNDA HOLDING; WARREN HOLLIS; LINDA HOLLIS, DECEASED, HER DEVISEES AND PERSONAL REPRESENTATIVES; BENJAMIN HOLT; DIXIE HOOVER; E HOOVER; KENNETH HOPE; SANDRA HOPE; BRIAN HORNER; JAN HOUCK; GRACE HOUSER; ADDIE HOWSLEY, DECEASED, HER DEVISEES AND PERSONAL REPRESENTATIVES; ANDREW HOWSLEY, DECEASED, BY KRIS HOWSLEY KING AS EXECUTOR; ANDREW HOWSLEY, DECEASED, HIS DEVISEES AND PERSONAL REPRESENTATIVES; KATHY HUBBART; MARY HURST; VERONICA HUSKIN; CHRISTA HUYCK; RONALD HUYCK; HEATHER IANNELLO; CARMEN ILTON; KATHY LEE INDERMILL; REBECCA INTERIAN; BARBARA JACKSON;

4

1612048758.3

KENNETH JACKSON; JOSEPH JACOBSON; CAROLYN JENSEN; IRMA JEZEK; RICHARD JEZEK; DUWAYNE JILEK; SHELLEY JILEK; DAVID JOHNSON; BEVERLY JONES; ELIZABETH JONES; TERRY JONES; VAN JONES; BARBARA KENDALL; ROBERT KENDALL; CARL KERNS; FRANKIE KERNS; D PATRICK KESTELL; SUSAN KESTELL; CATHY KJELLSEN; BRIAN KLIMENT; PATRICIA KLINKERMAN; CAROL KNIGHT; ED KOLLE; LINDA KOLLE; ELOAN KORTKAMP; MARK KOZEMCHAK, DECEASED, HIS DEVISEES AND PERSONAL REPRESENTATIVES; DANIEL KUYKENDALL; RHONDA KUYKENDALL; SAMUEL KUYKENDALL; SHARON KUYKENDALL; MICHELLE LABRIER; WELDON LACY; LESLIE LANE; GARY LANTZ, AS TRUSTEE OF THE LANZ FAMILY TRUST; MARCIA LANTZ, AS TRUSTEE OF THE LANZ FAMILY TRUST; GLENN LARSON; ROYLENE GAY LARSON; DEBBIE LAY; WILLARD LAY; JUDIANNE LEGGIN; HELEN LEHMAN; A LEMIEUX; MICHAEL LEONARDI, AS TRUSTEE OF THE LEONARDI LIVING TRUST; NICOLE LETTOW; WILLIAM LETTOW; SHARON LEWIS; THEODORE LEWIS; VERLA LEWIS; WILLIAM LEWIS; DALTON LEWIS, TRUSTEE; OMAJEAN LEWIS, TRUSTEE; DAYLENE LINVILLE; JON LINVILLE; MISCHELE LOPEZ; DAVID LOWRY; ARNOLD LUDKE; JOAN LUDKE; JUSTIN LUFFY; LINDSAY LUFFY; ARTURO LUNA; EMELY LUNA; TINA LUTHER; DIANE MAESTAS; JOSEPH MAESTAS, DECEASED, HIS DEVISEES AND PERSONAL REPRESENTATIVES;

5

1612048758.3

NANCY MAGEE; WARREN MAGEE; DAVID MANSELL; MICHELE MANSELL; DENISE MARKHAM; JEFF MARKHAM; RICHARD MARSHALL; BETTY MARTIN; GARY MARTIN; WYNEMA MARTIN; BARCLAY MARTIN JR.; JOAN MARTIN, AS TRUSTEE OF THE MARTIN FAMILY LIVING TRUST; MANUEL MARTINEZ; CAROL MARTZ; HARRY MARTZ; RICHARD MASHBURN; SALLY MCCLARY, DECEASED, HER DEVISEES AND PERSONAL REPRESENTATIVES; CHRISTINE ROTOLE MCCONNELL; HAYDN MCCULLEY; REX MCCULLEY; GRADY MCCULLOUGH; JOAN MCCULLOUGH; JOHN MCCULLOUGH; BRUCE MCELDERRY; KATHLEEN MCELDERRY; DONALD MERRILL; JULIANNE MICHAELS; GORDON MIDDLETON; LYNNA MIDDLETON; ERIC MILLER; JENNIFER MILLER; KARINA MILLER; MARIANNE MILLER; JUDY MILLICAN; RON MILLICAN; A R MOCK; MELVIN VINCENT MOFFITT; KELLEY MOORE; SCOTT MOORE; CATHYE MORENO; DONALD MORENO; ANNE MORGAN; ELAINE MORRISON; HUGH MOTTO; JUDY MOTTO; CYNTHIA MOYER; RICHARD MOYER; VALERIA MRAZ; LAWRENCE MUELLER; SHIRLEY MUSSLEWHITE; FRANK NAGLE; GAYL NEWTON; GLADYS SUE NICKEL; PAUL NICKEL; LORETTA NIEDIEWSKI; JULIE NOVAK; MARK NOVAK; FIRST ASSEMBLY OF GOD; PAUL OHARA; VIRGINIA OHARA; KENNETH OLIVER; GLENN OLSON; LAURA OLSON; JOHN P OVERTON; LAVON R OVERTON; DAVID OWEN; MARIAN PANIAGUA; STEVE PANIAGUA; JOHN PARMLEY; DAVID

6

1612048758.3

PASION, TRUSTEE; THERESE MA
PASION, TRUSTEE; JOAN DE PAULI;
LYNN PEARSON; JOSEFINA PENA;
DOUGLAS PETERSON; KATHERINE
PETERSON; CHRISTINE PHILLIPS; JOHN
PHILLIPS; JOHN PILCHER; PAT
PILCHER; ELLEN POULSON; TIFFANY
POULTER; WILLIAM POULTER; MICHAEL
DESO PRESIDENT; DIANA PRICE; LEE
PRICE; ARTHUR PUCKETT; PEGGY
PUCKETT; LAURA PULLIAM; LEON
PULLIAM; JERRY EDWIN QUISENBERRY;
ERIN RABER; ZACHARY RABER;
JOVONNA RAINEY; TIM RAINEY;
ANTHONY RAMOS; JEANETTE RAMOS;
RALPH RAMSTETTER; LAUREL
RAMSTETTER; LINDA RAWLE; WESLEY
RAWLE; LUCINDA RAY; MICHAEL RAY;
PAMELA RECORDS; RANDY REECER;
VICKIE REECER; MARSHA REED; JAMES
RELYEA; RYAN RHOADES; REVOCABLE
TRUST RICHARD N MORRISON;
CHARLES RILEY; DOUGLAS RILEY;
PAMELA RISINGER; SALLY ROE; CHRIS
ROGER; CHERYL ROMERO; DAVID
ROMERO; EDDIE ROMERO; ELIZABETH
ROMERO; STEPHANIE ROMERO;
LAWRENCE ROMERO, DECEASED, HIS
DEVISEES AND PERSONAL
REPRESENTATIVES; ANDREA
ROSENZWEIG; AARON ROWLAND; ERIIK
ROWLAND; GLORIA ROWLAND;
MICHAEL ROWLAND; BARBARA
ROWLETT; STANLEY ROWLETT; DAWN
ROYAL; FRANCES ROYAL; KAREN
ROYAL; LAWRENCE ROYAL; PATRICIA
RUPPEL; ANA RUPPLE; MASUZO
RUPPLE; SARA RYKACZEWSKI; DANA
SAGER; JANET SAINT; DIANA
SCHAEFFER; HOWARD SCHAEFFER;

7

1612048758.3

MARK SCHAEFFER; MARY SCHAEFFER; CYNTHIA BAKER SCHVERAK; JOHN SCHVERAK; DONALD GERARD SCOTT; SVETLANA SCOTT; FLOYAL SCROGUM; KATHERINE FAYE SCROGUM; ERMA SEDILLO; JULIE SEDILLO; OSCAR SEDILLO; LINDA SHAFFER; PATRICK SHAFFER; CYNTHIA SHANNON; JEFFREY WAYNE SMITH; JOE GRIFFIS SMITH; SARA DENISE SMITH; DONALD SNYDER, AS TRUSTEE OF THE DONALD C SNYDER AND MARY ANN SNYDER JOINT TRUSTED DATED 5/28/2014; MARY ANN SNYDER, AS TRUSTEE OF THE DONALD C SNYDER AND MARY ANN SNYDER JOINT TRUSTED DATED 5/28/2014; DONALD SOUTHERLAND; SUSAN SOUTHERLAND; DAYVA SPITZER SUCC TRUSTE; CHARLES STARKEY; JERRY STEPHENS; SHARON STEPHENS; AUDREY STERN; THEODORE STERN; CYNTHIA STENGER STOCKSTILL; ERIC DOUGLAS STOCKSTILL; MARY STOICK; MICHAEL STOICK; NORTON STROMMEN; ROSEMARY STROMMEN; SUSAN STROMMEN; JOHN STROUP; MICHAEL SUMMERS; ROBERT SUMMERS; TAMI SUMMERS; THERESA SUMMERS; DEBORAH LURLEEN TALBERT; DOYLE TRAVIS TALBERT; DAVID TERRY; JANET TERRY; FRANZ THEARD; SCOTT THOMAS; MARK THOMPSON, AS TRUSTEE OF THE THOMPSON FAMILY TRUST; DEBRA ANN THOMSON; JOSEPH TILTON; JOEL TOOLEY; PAMELA TOOLEY; ANITA TORRES, TRUSTEE; JEREMIAS TORRES, TRUSTEE; JOHN TREHARN; PENNY TREHARN; FRANCES LEE TRUJILLO; GREG VALDEZ; NELLY

8

1612048758.3

VALDEZ; SUSAN VANAHILL; CAROL VIGIL; MARK VIGIL; ANTHONY VITALI; CYNTHIA VITALI; JOHN VOLLBRECHT; RHONDA VOLLBRECHT; DOUGLAS WAGNER; R SCOTT WAGNER; CLED WAGNER, TRUSTEE; L RUTH WAGNER, TRUSTEE; BETTY WALKER; LINDA WALKER; TIMOTHY WALKER; JOHN DAVID WARFIELD; LAURA BISCHOFF WARFIELD; DAVID WARREN; WILLIAM JAMES WARREN; ANNE WATZKE; LARRY WATZKE; CALVIN WEBB; JAMES WEST; NANCY WEST; ORIN WILKINS; PATSY WILKINS; JEFFREY WITTEN; PAM WITTEN; STEPHEN WOELFLE; EZEKIEL WOLF; GERALYN WOLFE; LARRY HUGH WOLFE; CRAIG WOLVERTON; JULEE WOLVERTON; JAMES WRIGHT; KATHY WRIGHT; CHARLES YOUNG; TERENCE YOUNG, TRUSTEE; LIZA YUDZEVICH; A TO Z PROPERTIES LLC; ROMAN ZACHARKO; JOSEPH ZANZUCCHI; PAMELA ZANZUCCHI,

Defendants.

**FIRST AMENDED COMPLAINT TO AUTHORIZE
SALE OF DEBTOR AND NON-DEBTOR CO-OWNERS'
INTERESTS IN REAL PROPERTY PURSUANT TO 11 U.S.C. § 363(h)**

Plaintiff, Elk Run Property Owners Association, Inc. (the "Plaintiff," "Association," or "Debtor"), files this *First Amended Complaint to Authorize Sale of Debtor and Non-Debtor Co-Owners' Interests in Real Property Pursuant to 11 U.S.C. § 363(h)* (the "Complaint") seeking relief pursuant to 11 U.S.C. § 363(h) against the above-named defendants (collectively, the "Defendants" or "Owners"). In support of the Complaint, Plaintiff states and alleges as follows:

9

1612048758.3

**PRELIMINARY STATEMENT**

The Association is filing this Complaint seeking authority to sell the Property, which is described and defined below, including the interests of the Association and the Defendants in the Property. The Association is **_not_** seeking monetary judgment against any of the Defendants in this Complaint. Rather, the Association anticipates that each Defendant, subject to any setoff for amounts due to the Association and confirmation of their ownership interest, will ultimately receive money from the sale of the Property.

**THE PARTIES**

1.     The Association is a nonprofit corporation organized under the laws of the State of Colorado pursuant to Articles of Incorporation filed with the Secretary of State of the State of Colorado on May 22, 1986 (the "Articles of Incorporation").  Pursuant to the Articles of Incorporation, the Association was organized *"[t]o own, operate, manage, lease, maintain, repair, and generally administer the affairs of the property within Elk Run which is a real property development in Archuleta County, Colorado, and, to have all those powers enumerated in the Declaration, recorded In the Office of the County Clerk and Recorder for Archuleta County, Colorado, as the same may be amended from time to time."*

2.     The Association was formed pursuant to a Declaration of Protective Covenants and Interval Ownership for Elk Run Townhouses (the "Original Declaration") recorded on June 26, 1986 at Reception No. 0140481 in the Office of the County Clerk and Recorder for Archuleta County, Colorado (the "Clerk's Office") as amended by that certain First Amendment to the Declaration of Protective Covenants and Interval Ownership for Elk Run Townhouses ("First Amendment") dated August 11, 1986 and recorded on August 13, 1986 at Reception No. 014512 in the Clerk's Office, and that

10

1612048758.3

certain Second Amendment to the Declaration of Protective Covenants and Interval Ownership for Elk Run Townhouses ("Second Amendment") dated November 24, 1987 and recorded on December 1, 1987 at Reception No. 0151976 in the Clerk's Office. The Original Declaration, First Amendment, and Second Amendment are collectively referred to as the "Declaration."

3.      The Declaration established the Association and submitted the property identified in the Declaration to a Plan of Interval Ownership and created therein a time-share program in accordance with C.R.S. §§ 38-33-110 and 38-33-111. The Declaration serves as the project instrument for the interval ownership regime.

4.      Pursuant to Section AA of Article I of the Declaration, *"[t]he term 'Unit Committed To Interval Ownership' shall mean any Unit sold under a plan of Interval Ownership."*

5.      Pursuant to Section BB of Article I of the Declaration, *"[t]he term 'Unit Week Owner' or 'Owner' shall mean any Person owning one or more Unit Weeks in a Unit Committed To Interval Ownership…."*

6.      Pursuant to Section 1.CC of the First Amendment, *"[t]he Term 'Unit Week' shall mean the time period, designated by Building Number and Unit Week Number, during which an Owner is entitled to occupy a Unit Committed to Interval Ownership on an annual and recurring basis for a period of years, subject to the terms of this Declaration, the Articles of Incorporation, Bylaws, and Rules and Regulations."*

7.      Pursuant to Section M of Article I of the Declaration, *"[t]he term 'Interval Ownership' shall mean that form of real property ownership in a Unit Committed To Interval Ownership by which an Owner is entitled to occupy a Unit Committed to Interval*

11

1612048758.3

*Ownership on an annual and recurring basis during a designated time period ('Unit Week') for a period of years, together with a remainder over in fee simple as a tenant in common with other Owners. The acquisition or conveyance of an Interval Ownership interest consisting of an estate for years with a vested future interest in fee simple shall not be deemed to have merged with the future interest nor shall the estate for years and the corresponding future interest be conveyed or encumbered separately from the other."*

8.      Pursuant to Section G of Article I of the Declaration, *"[t]he term 'Common Area' shall mean and include all of the real property and real property improvements, excluding the Units and Units Committed to Interval Ownership, committed by the Developer to this Declaration, including but not limited to areas which are designated on a plat as such, and, in addition, all pipes, wires, conduits, or utility lines running through a Unit or Unit Committed to Interval Ownership which are utilized for or serve more than one Unit or Unit Committed to Interval Ownership. Common Area includes general Common Area and Limited Common Area, if any."*

9.      Pursuant to Section P of Article I of the Declaration, *"[t]he term 'Maintenance Weeks' shall mean the two Unit Weeks, designated by the Developer, which may be set aside for maintenance and repair of a Unit each year."*

10.     The original By-Laws for the Association were dated June 26, 1986 and recorded in the Clerk's Office on January 26, 1989 in Book 239, at Page 56, et seq. The Bylaws were amended by the First Amendment to The Bylaws of Elk Run Property Owners Association, Inc. dated August 5, 2017 and subsequently recorded with the Clerk's Office (collectively the "Bylaws").

1612048758.3

11.     On or about January 20, 2026 (the "Petition Date"), the Association filed a voluntary petition for relief pursuant to Subchapter V of title 11 of the United States Code (the "Bankruptcy Code").[1] Since the Petition Date, the Association has remained in possession of its assets and has continued management of its property, business, and affairs.

12.     As of the Petition Date, the Defendants and Association co-own tenant-in-common fee simple interests in the Property.

13.     The Defendants are tenant-in-common owners of fee simple interests at the Property as identified on the Association's books and records as of May 13, 2026.

## JURISDICTION AND VENUE

14.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.

15.     This is a core proceeding pursuant to 28 U.S.C. §§ 157(a) and 157(b)(2)(A), (N) and (O).

16.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

17.     The statutory predicates for the relief sought herein are sections 105(a) and 363 of the Bankruptcy Code, including section 363(h), and rules 7001 et. seq. of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), including Bankruptcy Rule 7001(c).

18.     The Association consents to the entry of final orders and judgment by the Court.

---

[1] All references to the "Bankruptcy Code" herein refer to 11 U.S.C. §§ 101-1532.

1612048758.3

## COMMON ALLEGATIONS

### A.    The Property

19.    The property subject to the Declaration, and governed by the Association, is located at 457 Talisman Drive (Units 7101–7108) and 537 Talisman Drive (Units 7109–7118), Pagosa Springs, Colorado (the "Property").

20.    The Property is commonly known as *Elk Run Townhouses* and consists of five buildings containing eighteen units (the "Units") and their concomitant Common Areas.

21.    As authorized by more than the required number of Owners prior to the Petition Date, (i) occupancy at the Property by Owners, guests and others was suspended as of December 27, 2025, and (ii) collection of 2026 maintenance fees from Owners was suspended.

22.    The Association, via its contract with a management company, continues to maintain the Property as debtor-in-possession pursuant to Sections 1181 and 1184 of the Bankruptcy Code so that the Property can be sold for its highest and best value.

### B.    The Ownership Structure of the Property

23.    The buildings were constructed and added to the timeshare plan in two phases.  Phase one consisted of Building 1 containing four Units subject to Interval Ownership, Building 2 containing four Units subject to Interval Ownership, Building 3 containing four Units subject to Interval Ownership, and Building 4 containing four Units subject to Interval Ownership.  Phase two consisted of Building 5 containing two Units subject to Interval Ownership.

1612048758.3

24.     Pursuant to Section A of Article V of the Declaration, each of the eighteen Units contains fifty-two weekly intervals, called Unit Weeks.  There are 936 total Unit Weeks at the Property.

25.     The Association owns one Unit Week (a maintenance week) in each Unit and a concomitant share of the Common Area at the Property. Accordingly, the Association owns an interest in every Unit at the Property.

26.     Pursuant to a Special Warranty Deed from the developer dated September 3, 2025 and recorded on September 4, 2025 at Reception No. 22503610 in the Clerk's Office, the Association owns one Unit Week in each Unit at the Property as follows:

- <u>Phase One</u>
  - Building 1, Units 7101, 7102, 7103, and 7104, Week 14
  - Building 2, Units 7105, 7106, 7107, and 7108, Week 14
  - Building 3, Units 7109, 7110, 7111, and 7112, Week 43
  - Building 4, Units 7113, 7114, 7115, and 7116, Week 43

- <u>Phase Two</u>
  - Building 5, Units 7117 and 7118, Week 43

27.     The Association owns eighteen Unit Weeks at the Property and a concomitant share of the Common Area at the Property (the "<u>Association Interest</u>"), which comprises approximately 1.92% of the total Unit Weeks at the Property.

28.     The Association owns an undivided interest in the Property as a tenant-in-common with all other Owners.

29.     According to the records of the Association, as of May 13, 2026, Defendant First American Trust, FSB, as Trustee, Duly Appointed Under the Declaration of Trust for the Club Wyndham Access Vacation Ownership Plan ("<u>First American Trust, as Trustee</u>") owns 179 of the 936 Unit Weeks at the Property, and a concomitant share of the Common

1612048758.3

Area at the Property. First American Trust, as Trustee, owns approximately 19.12% of the total Unit Weeks at the Property. First American Trust, as Trustee, is a tenant-in-common with all other Owners at the Property as well as the Association.

30. According to the records of the Association, as of May 13, 2026, Defendant WorldMark, the Club ("WorldMark, the Club") owns 340 of the 936 Unit Weeks at the Property, and a concomitant share of the Common Area at the Property. WorldMark, the Club owns approximately 36.32% of the total Unit Weeks at the Property. WorldMark, the Club is a tenant-in-common with all other Owners at the Property as well as the Association.

31. According to the records of the Association, as of May 13, 2026, Defendant Wyndham Vacation Resorts, Inc. ("WVR") owns 94 of the 936 Unit Weeks at the Property, and a concomitant share of the Common Area at the Property. WVR owns approximately 10.05% of the total Unit Weeks at the Property. WVR is a tenant-in-common with all other Owners at the Property as well as the Association.

32. According to the records of the Association, as of May 13, 2026, the remaining 305 of the 936 Unit Weeks at the Property, and a concomitant share of the Common Area at the Property, are owned by approximately 548 parties to approximately 305 contracts (collectively, the "Interval Owners"). The Interval Owners own approximately 32.59% of the total Unit Weeks at the Property. The Interval Owners are tenants-in-common with all other Owners at the Property as well as the Association.

33. The Defendants do not currently occupy the Units at the Property.

34. Accordingly, no Defendant will be displaced from their home by the proposed sale of the Property.

1612048758.3

35.     Upon the filing of the Petition, the Association Interest owned by the Association became property of its bankruptcy estate pursuant to 11 U.S.C. § 541(a), and the Association is otherwise a tenant-in-common with the Defendants.

**C.      The Potential Sale of the Property**

36.     Sale of the Property free and clear of the interests of the Association and Defendants provides the ability to attain the highest and best offer for the Association and Owners.

37.     On April 17, 2026, the Association filed *Debtor's Motion for Entry of an Order (I) (A) Approving Auction and Bidding Procedures, (B) Authorizing the Debtor to Designate a Stalking Horse Bidder, (C) Scheduling Bid Deadlines and Auction, and (D) Approving the Form and Manner of Notice Thereof, and (II) Granting Related Relief* (Docket No. 126) (the "Bid Procedures Motion"), seeking to establish procedures to market and sell the Property, including the Association Interest in the Property, together with the interests of (i) First American Trust, as Trustee, (ii) WorldMark, the Club, (iii) WVR, and (iv) all other Owners.

38.     On May 13, 2026, the Bankruptcy Court entered the *Order (I) (A) Approving Auction and Bidding Procedures, (B) Authorizing the Debtor to Designate a Stalking Horse Bidder, (C) Scheduling Bid Deadlines and Auction, and (D) Approving the Form and Manner of Notice Thereof, and (II) Granting Related Relief* (Docket No. 142) (the "Bid Procedures Order"), which granted the Bid Procedures Motion. The Bid Procedures Order accounts for and resolves the Defendants' rights under 11 U.S.C. § 363(i).

39.     Pursuant to the Bid Procedures Order, the Association is marketing the Property (including related personal property, if any) for sale.  As of this date, the Association has not presented a proposed sale to the Bankruptcy Court for approval.

40.     On April 17, 2026, the Association filed the *Elk Run Property Owners Association, Inc.'s Plan of Liquidation* (Docket No. 129) (the "Plan").  The Plan remains pending before the Court and subject to its approval.

41.     Any ultimate disposition of the Property, and any proposed distribution of proceeds of any sale, shall be subject to separate request(s) of the Association to the Court and subject to separate judgment(s) or order(s) of the Court (including, potentially pursuant to an order confirming the Plan).

42.     The Association intends to separately seek orders or judgments from the Court (i) determining the extent of the ownership interest of each Defendant, and the amount due by each Defendant for outstanding maintenance fees or assessments to the Association, if any, and (ii) authorizing the distribution of the proceeds of any sale approved by the Court, less the costs and expenses of such sale as may be approved by the Court (which may include any order confirming the Plan).

**D.     Proposed Consent Judgments**

43.     At a special meeting of the members of the Association conducted on October 7, 2025, with a quorum of the voting interests represented in person or by proxy, more than 99% of the members of the Association in attendance voted to authorize the Board of Directors to file a chapter 11 bankruptcy petition for the Association to, among other things and subject to Court approval, market and sell the entire Property, free and

18

1612048758.3

clear of the interests of all Owners (as well as the Association), with such interests to attach to the proceeds of sale, subject to distribution pursuant to Court order.

44.     The Association believes that many Defendants will consent to the relief sought in this Complaint.

45.     Together with the Complaint, the Association is providing each Defendant with a *Stipulation and Consent Judgment* (a "Consent Judgment") offering to resolve the Complaint and this adversary proceeding as to each Defendant.

## COUNT 1 – SALE OF REAL PROPERTY PURSUANT TO 11 U.S.C. § 363(h)
## (Against All Defendants)

46.     The Plaintiff repeats and realleges the allegations set forth in all preceding paragraphs of this Complaint, as if set forth at length herein.

47.     The Plaintiff requests the Court enter judgment against each Defendant named herein authorizing Plaintiff to sell the Plaintiff's interest in the Property together with the Defendants' interests in the Property, pursuant to 11 U.S.C. § 363(h).

48.     As of the Petition Date, the Plaintiff and the Defendants co-owned the Property as tenants-in-common.

49.     As of the Petition Date, the Plaintiff had an undivided interest in the Property as a tenant-in-common.

50.     Partition in kind of the Property among Plaintiff and the Defendants is impracticable.  Due to the large number of the Owners of the Property and the timeshare structure of the Property, a standard partition action would be unwieldy, prohibitively expensive, and necessitate the use of a less formal process under state law.

51.     Sale of the Plaintiff's undivided interest in the Property would realize significantly less for the Plaintiff's bankruptcy estate than sale of the Property free of the

19

1612048758.3

interests of the Defendants.  The market for individual timeshare interests is substantially discounted from the sale of the Property as a whole, considering the fraction of each individual interest and the limited nature and rights that correspond to such interests.

52.     The benefit to the Plaintiff's bankruptcy estate of selling the Property free of the interests of the Defendants in the Property outweighs the detriment, if any, to the Defendants – none of whom are full-time occupants of the Property.

53.     Defendants' interests in the Property will attach to the sale proceeds and shall only be disbursed subject to further judgments or orders of the Court.

54.     The Property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power.

55.     All requirements for a sale of the Property pursuant to 11 U.S.C. § 363(h) are satisfied.

**WHEREFORE**, the Plaintiff respectfully requests that the Court enter a judgment in favor of Plaintiff against each Defendant:

(a)     authorizing Plaintiff to sell the Plaintiff's interest in the Property together with the Defendants' interests in the Property (including related personal property, if any), pursuant to section 363(h) of the Bankruptcy Code and rule 7001(c) of the Bankruptcy Rules, provided that any sale of the Property shall be subject to further order of the Bankruptcy Court pursuant to the Bid Procedures Order or otherwise;

(b)     authorizing the Plaintiff to execute on behalf of the Defendants any and all necessary documents to consummate a sale of the Property, including, but not limited to, deeds, assignments, affidavits, certifications, resolutions, authorizations, closing

1612048758.3

statements, title documents, recording documents, and any other instruments as may be necessary or prudent in connection therewith;

(c)      pursuant to section 363(j) of the Bankruptcy Code, directing that after a sale of the Property pursuant to section 363(h) of the Bankruptcy Code, the Plaintiff shall distribute to the Defendants, according to the Defendants' interests in the Property as determined by further order of the Bankruptcy Court, the proceeds of such sale less the costs and expenses of such sale, which, for the avoidance of doubt include, but are not limited to, (i) those reasonable costs and expenses (including professional fees and commissions) incurred by the Plaintiff in connection with the Bid Procedures Motion and Bid Procedures Order, (ii) the marketing and sale of the Property, (iii) the closing of a sale of the Property, (iv) this Complaint and adversary proceeding, (v) the determination of Defendants' interests in the Property, and (vi) any distribution of sale proceeds, which amount of such costs and expenses (including professional fees and commissions) shall be determined by further order of the Bankruptcy Court; and

(d)      granting the Plaintiff such other relief that this Bankruptcy Court deems just and equitable.

Dated: July 16, 2026

Respectfully submitted,

*/s/ Kevin S. Neiman*
Kevin S. Neiman, #36560
**Law Offices of Kevin S. Neiman, pc**
P.O. Box 100455
Denver, CO 80250
Telephone: (303) 996-8637
Email: kevin@ksnpc.com

- and -

21

1612048758.3

Brandy A. Sargent
**K&L GATES LLP**
One SW Columbia Street, Suite 1900
Portland, OR 97204
Telephone: (503) 228-3200
Email: brandy.sargent@klgates.com

- and -

Daniel M. Eliades
Peter J. D'Auria
**K&L GATES LLP**
One Newark Center, Tenth Floor
Newark, NJ 07102
Telephone: (973) 848-4000
Email:       daniel.eliades@klgates.com
             peter.dauria@klgates.com

- and -

Jonathan N. Edel
**K&L GATES LLP**
300 South Tryon St., Suite 1000
Charlotte, NC 28202
Telephone: (704) 331-7400
Email: jon.edel@klgates.com

Counsel for Debtor and Debtor-in-Possession

22